Brevard, J.
This action being in nature of a writ of deceit, it is substantially founded on fraud; and, to entitle the plaintiff to recover, two things must concur; namely, fraud and damage. The suggestion of falsehood, or the suppression of truth, though an injury may thence result, will not afford sufficient ground for an action, unless such immoral conduct has proceeded from a fraudulent motive, and was intended and calculated to produce an injury or damage to the party complaining thereof in particular, or to all others in general. This appears to me to be the true doctrine on on this subject, though there are, I believe, respectable opinions which seem to favour a more extensive definition, and would give a wider range to the action. 3 *8 D. & E. 51. 1st East. Eyre v. Dumsford, 2nd East, 92. 3rd Bosanqt. & Pull. 367. 6th Johns. 181. 3rd Johnson, 271.
A naked, wilful lie, or the assertion of a falsehood knowingly, is certainly evidence of fraud; but yet it is not conclusive evidence. An intention to deceive is material, but if the falsehood asserted or imposed, is in its nature a character calculated directly to defraud and injure some one particular person, or all persons generally, an intention to deceive and injure any one who may thereby be deceived and defrauded, may be implied. To authorise an application of this doctrine to the, present case, so as to support the verdict which has been given, it ought to appear clearly beyond a reasonable doubt, that the words “ paid and settled,” (or whatever the words were which the witnesses proved were inscribed ón a list of bills which was exhibited to them by Edwin Gardner, as having been transmitted to him by the defendant,) were in fact written by the defendant or by his procurement. It is possible, that the writing on that paper, was all his handwriting, except the particular words which, related to the bill in question, and that those words - were not written by him. The evidence is not very satisfactory to my mind that any part of the writing was his; but still less so, as it relates to the words which concern this particular bill. All circumstances considered, it appears to me much more probable that the writing was not his, notwithstanding the testimony of the witnesses, which went to prove the contrary. The witnesses, no doubt, believe that *9 it was his writing, and, it may be, that they were not mistaken, though they did not examine the writing with any view to detect a forgery; but as a very little alteration or addition was necessary to ef-feet the deception complained of, and as none of the witnesses have said that they or any of them directed their attention to that part of the writing which has had that elfect, with any view to ascertain whether it in particular was in the handwriting of the defendant, I am induced from other circumstances to believe that this part of the writing was not his. At all events, I am not satisfied that on such evidence, the jury were authorised to say that it was his; and, without that the verdict cannot be supported. If the writing was the defendant’s, it must have been written by mistake or through inadvertence, without a knowledge or consciousness of its falsehood, or it was written to deceive Edwin Gardner, who might have relied on some promise of the defendant to take up the bill; or, lastly, it was done to effect the very purpose which it is said to have effected, and of which the plaintiff complains. The counsel who argued for the plaintiff, deny that it was written by mistake. They deny that it was written to deceive Edwin Gardner. They chaige the defendant with having written it for the express purpose of deceiving and defrauding the plaintiff. It would be more charitable, and much more probable, in my. opinion, to suppose, that if the defendant is the author of the writing in question, he wrote it either through mistake or to de *10 ceive his brother. The latter supposition may be rr J made without imputing to him very great moral turpitude, if we should further suppose that he did not mean to defraud, but only deceive for a time. gut 0f the plaintiff’s counsel would impute to him a deliberate and wilful falsehood, calculated to deceive, and, in collusion with his brother, to defraud the plaintiff forever, of the amount contained in the bill with damages, interest and costs. The counsel, however, were perfectly right to insist on the ground they did, because on neither of the other hypothesis could the action . be maintained. If it was an unintentional mistake, the defendant cannot be responsible; if it was intended only to deceive his brother, he cannot be liable to another person, because it was not calculated to defraud or deceive any other person. It appears to me extremely improbable, that it was done by him to produce the consequence complained of as an injury. The defendant has been represented as a man of general probity, in great credit as a merchant, and labouring under no embarrassments ; at any rate, not entangled in the ruinous transactions and speculations of Edwin Gardner. It is difficult to conceive any benefit or gratification which he could expect to result to himself from this fraudulent act. He was not indebted to Edwin Gardner and Co. He had not bound himself to take up this bill; unless we can believe so without evidence. It cannot well be supposed, he would collude with his brother to deceive and defraud the plaintiff in a case like the present, where so many circumstances *11 were to concur in order to effect the purpose: . A 1 ' which circumstances must have been foreseen^ long before they happened, and when the object was so inconsiderable as it affected his brother, and of no consequence whatever to himself. To descend to act a part so dishonest and base, without some strong motive, no man of common sense ever could be pre-vaile'd on, and especially under the certain prospect of being detected and exposed. The only advantage which his brother could. hope to derive from the fraudulent act, would be the temporary relief from the demand of a single creditor. The deceptive representation could not be expected to operate an extinguishment of the claim. It could only afford time to carry on more securely fraudulent operations to the injury of other persons, till the eyes of all should bé opened at once upon the true character of these manoeuvres.
Is there any reason to believe that either the defendant or Edwin Gardner was desirous of defrauding the plaintiff, rather than any other of the creditors of Edwin Gardner and Co. ? It appears to me that the latter inclined to favour her, but was so immersed in debts and so surrounded by importunate creditors, that he could not do it with convenience. Among so many who were to suffer by his contemplated failure, it was not singular that she also should be left unpaid. It has been considered as a harsh and injurious course, to attempt to exculpate the defendant by presuming against Edwin Gardner that he exhibited a false writing to the *12 plaintiff’s agent; in order to gain time. But is this course more harsh and injurious; than to indulge the supposition on which this action is founded; that both the brothers were guilty of falsehood , „ , and fraud r
It has been said; however, that to warrant the belief, that the writing was forged, (or any part of it,) the evidence ought to be as strong and convincing as would be requisite to convict a party charged on an indictment for forgery. To this argument, I cannot yield my assent. The forgery was not of such a nature as to furnish any ground for an indictment. It was calculated not to defraud the defendant, or even the plaintiff, but merely to excuse a breach of promise or cover an antecedent fraud. It has been said that fraud ought not to be presumed. To this I agree, but the question is not, whether we are to presume fraud, but whether the evidence does not prove fraud; whether it does not authorise the presumption of a dispunishable forgery in order to gain a temporary respite from the clamours and reproaches of an injured and disappointed creditor. Can it be said with propriety, that Edwin Gardner was a man incapable of such conduct ? In asking this question, I have no wish or intention unnecessarily to open the wounds which his reputation may have received. I found nothing on common report, or extra-judicial knowledge. I rely solely on the evidedce reported in this ease. What is the proof it furnished ? That he was a man overwhelmed with debts; that for *13 some time he had supported a false and deceitful credit, and saved himself from sinking under the incumbent weight of multiplied and increasing demands, by catching at every thing which accident or deception brought within his reach : that during these struggles to protract the term of his mercantile existence, he pesprted to various means to elude or satisfy his creditors: that he had deceived the plaintiff by drawing on a commercial house in London, where he had no funds : that he persuaded her to rely on the defendant, his brother, to take up the bill on his account, when he had no right to promise this on the part of the defendant, in whose hands he had no funds: that the plaintiff by her agents were daily teazing and importuning him to satisfy her claim, and might be prying iiito his circumstances, might discover the embarrassments of his situation, and sound the tocsin among his numerous, unsuspecting creditors : that he repeatedly assured her agents, that the bill had been paid by his brother, when he must have known the contrary, unless it can be believed that the defendant deceived him without any apparent motive: that his own wife was’distressing him with earnest and pressing entreaties and remonstrances in behalf of her friend, the plaintiff: that he must have calculated on a speedy and total bankruptcy, and could not hope to deceive the plaintiff any time beyond the date of his general credit: and that no other or greater injury or loss was experienced by the plaintiff in consequence of the forgery, (if such it may be called,) than would in all probability have befallen her, if *14 ^le writing alluded to had never existed or been shewn to her. In addition to all these things, let it be recollected, that afterwards, when the credit of Edwin Gardner was fast on the decline, and he was applied to for this paper, it was not produced, it was unfortunately mislai,d. He promised to search for it and produce it again to the plaintilf, hut she saw it no more. After considering all these circumstances, the impression on my mind is little short of perfect conviction, that the writing (so much of it as related to the bill in question being paid or settled) was a fabrication, not of the defendant, but of Edwin Gardner, and on that ground my opinion is, that the verdict is against evidence, and ought to be set aside.
But waiving this ground of exception, and admitting the writing, shewn to the friends of the plaintiff to satisfy her that the bill was taken up by the defendant, was all of it written by the defendant, and that he was conscious of the falsehood of the part of the writing of which the plaintiff complains, yet it will be difficult to make out the right of the plaintiff to recover in this action. If it was written to deceive Edwin Gardner, I cannot see how it can be made use of as an instrument to aid the plaintiff, because the writing appears no way calculated to do mischief to any one else. Indeed, I cannot see how it could work an injury to Edwin Gardner, or any other person from which damage would result. It might produce disappointment, vexation and resent, ment, but pot a pecuniary loss. I mean to say, that *15 from the evidence which has come to our notice, I cannot see that any damage was at all likely to result from the false representation, if it was one. A
I do not pretend to say, that a case could not happen under similar circumstances, in which the party written to directly, might sustain injury. To support this action, evidence ought to have been given to shew that the defendant, knowing all the facts relating to this bill, and that a writing of this sort would serve Edwin Gardner, as an effectual means to amuse the plaintiff and impose upon her credulity, (in the face of the most convincing proof to the contrary,) so far as to prevail upon her to discontinue the prosecution of any measures to, obtain payment, until it would be too late to do it with effect. Now there was no evidence of this, or next to none. The belief of it must rest almost entirely on conjecture; a conjecture altogether improbable and even absurd. It is improbable that any man of fair character, or even of any character, could be prevailed on by such inducements as those which are attributed to the defendant, to do an act so base and at the same time so little likely to succeed; an act too from which so trifling an advantage could be gained; and to do an injury which might have been as well done without it. It is absurd to suppose that this vile and foolish game could have-been concerted and played, by persons placed at such a distance apart, for a stake of no value, of _ no value absolutely, as it concerned the defendant,- and next to nono, as it concerned the supposed asso *16 ciate- admitting even the purpose of the defendant to defraud the plaintiff, (improbable as it appears to me,) there was no satisfactory evidence, (to my mind at least,) which proved that the plain-' ^ was ¿eceive¿ an(] defrauded by means of the writing in' question, and thereby sustained any damage. The evidence did not go to prove, that she trusted to the representation made in that writing, and not to the personal credit, and repeated verbal assurances of Edwin Gardner. It did not prove, that if the writing had not been produced, she would have had immediate recourse to such means as would have compelled Edwin Gardner to pay the debt: on the contrary it appears to me plain, that she relied on Edwin Gardner’s personal responsibility, and on the credit and solvency of the house of which he was the principal partner; on the friendship of his wife, "and the intercession of her other friends, and not at all, or very little, on this paper. How could she repose upon the security of such a paper? It was not directed to her; it was in the hands of á man who had wronged her; it was contradicted b' the strongest evidence that could be brought in ^er own possession. The paper, it is true, might have aided Edwin Gardner in imposing on her. Still, however, her reliance was not on the paper but on him. Upon his assertions, she believed the paper spoke the truth. It cannot be believed that without his assertions and assurances, she could have believed the statement in the paper, when she had the most convincing evidence in her hands to the contrary. She must have *17 either reiected the statement as false, or attributed it to mistake. That her confidence was m Edwin Gardner and not in the defendant, is further evidenced by her taking from him a second bill drawn on the defendant instead of the former, which was drawn on Simpson & Davidson. It is true, she did not accept of it as an extinguishment of the former demand or debt, but it serves to show her confidence in the man who had so often deceived her.
But suppose the paper had not been shewn to her or her agents, is it certain or even probable, that she would have so pressed Edivin Gardner for payment, as to have obtained it ? It appears to me, that the same postponement would have taken place, and the loss would have been equally sustained in that event. It is extremely probable, that she would have yielded so far to his assurances, as to have produced the same consequences. But if she had not consented to wait, in expectation of the bill’s being paid in England, still there is the strongest reason to support the belief, that he would not have paid her, whatever measures she might have had recourse to. It is certain she could not have compelled him to do so, as his bankruptcy was soon after notorious. It is more than probable, that, the same spirit or necessity, which dictated his former conduct to her, would have emboldened him to persist in his deceitful and injurious conduct towards her, and that he would have refused payment on the same ground on which he had evaded it.
*18 To conclude, my opinion is, decidedly, that taking the whole evidence in consideration, it is abundantly more strong to overturn than to support the verdict, and that the verdict ought to be set aside agajnst evidence, and also as contrary to law. I have taken no notice of the terms in which the verdict is expressed. I have thought this unnecessary, as independently of any evidence which this circumstance may furnish in favour of a new trial, I am clearly of opinion, it ought to be granted. Nevertheless, I cannot forbear saying, that the particular wording of the verdict indicates a consciousness, on the part of the jury, that it required some apology.
Grimke, J.
To bring this action within the law, it is necessary to prove ; 1st, That the conduct of the defendant was deceitful and fraudulent; 2nd, That the deceit was practised by defendant on the plaintiff to induce her to do a certain act j and 3rd, That trusting to this representation, she did an act by which she was injured.
With respect to the first, it does not appear to me, that the conduct of the defendant was either deceitful or fraudulent; there is no part of the evidence which points conclusively to this charge. The basis on which it rests is a paper, said to be in the handwriting of the defendant, in which the bill is mentioned among many others, with the word paid,” or settled,” opposite to it; and this paper has been proved to be in the handwriting of the *19 defendant by one witness, to whom Edwin Gardner, the drawer of the bill, shewed it for a few minutes, and to another who had it in his possession for sev-eral days; but, now that the paper is called for, Edwin Gardner says it cannot be found. Had that paper been in the possession of the defendant, such evidence as is here given, I should hold conclusive against him, unless he could shew, what had become of it. Another circumstance in favour of the defendant is, that his and Edwin Gardner’s handwriting is very much alike. Now, it was the interest of Edwin Gardner to induce a belief in the plaintiff, that the bill was paid 5 it was not the interest of James to impose any such belief on the plaintiff. His (James’) credit was not sinking ; his bills had not been protested : but Edioin was in that situation ; and, therefore, if he could impose on plaintiff’s credulity by exhibiting the paper in question, he might have an opportunity of taking it up before any suit could be instituted against him. Upon this point the jury have determined, that they believed the testimony of the two witnesses to the handwriting of James, when they (the witnesses) might have been mistaken, and when the paper itself was not submitted to them, against what I deem much stronger evidence than the testimony of those two witnesses, viz. the circumstances attending the case, for it further appears in evidence, that Edwin was indebted to defendant, and not he to Edwin.
2nd, It does not appear by any part of the testimony, that the defendant ever practised deceit on. *20 the plaintiff, to induce her to do any act. The bill was drawn by Edwin, payable, not to the plaintiff, but to a Mr. Bell, in Scotland, who was the only person that could be known in the transaction to the defendant. The defendant, it^seems, being brother of Edwin, and being then in England, and finding Edwin’s affairs in a tottering predicament, took them out of the hands of Edwin’s agent, paid some of his bills, and offered to Bell, if he would let the bill run over again, that he would accept and pay it: this being declined, the bill came back protested. There does not then appear any evidence which could induce a belief, that the defendant was prac-tising this deceit on plaintiff, and who, in this transaction, was an utter stranger to him. The sending the paper to Edwin, was for his {Edwin’s) information; that he might see what had been done, and was doing in his buisness. It could not be considered otherwise than as a private confidential communication from one brother to another, and which ought not to be wrested to the injury of the defendant, even if he had written the words opposite the hill, as it was not intended to practise a deceit upon the plaintiff, and of which, there is not a tittle of proof.
The two former grounds being thus invalidated, the third falls of course; for, in, this action, these three points must be proved before the plaintiff can make out her case; and, as I think, she has failed in all of them, I am of opinion a new trial should be granted.